563 So.2d 1000 (1990)
David H. SHENK
v.
Jan Reynolds SHENK.
No. 89-CA-1291.
Court of Appeal of Louisiana, Fourth Circuit.
June 14, 1990.
Rehearing Denied July 19, 1990.
*1001 Mitchell J. Hoffman, Lowe, Stein, Hoffman & Allweiss, New Orleans, for plaintiff/appellant.
James G. Derbes, Derbes & Waldrup, New Orleans, for defendant/appellee.
Before GARRISON, BARRY and BECKER, JJ.
BECKER, Judge.
David H. Shenk, appellant, contends that his wife, Jan, was not free from legal fault under LSA-C.C. art. 160 and should be precluded from permanent alimony.
David and Jan Shenk were married in Frederickburg, Virginia in 1971. During the course of their marriage, the couple moved from Boston to Florida and then to Texas. In 1984 the couple moved to Louisiana *1002 and established their matrimonial domicile in New Orleans.
On April 14, 1988, David Shenk instituted legal proceedings against his wife for separation from bed and board on grounds of living separate and apart. Jan Shenk denied the allegations in her answer and filed a reconventional demand alleging abandonment and adultery. On December 7, 1988, a judgment of divorce was granted in favor of David Shenk and the issue of alimony and fault was subsequently tried on February 21, 1989.
Although admitting to an adulterous relationship at trial, Mr. Shenk attempted to show his wife was also at fault in the dissolution of the marriage by her refusal to engage in sexual relations for a period of twelve years prior to the breakup of their marriage. He contended that this refusal constituted cruel treatment within the meaning of LSA-C.C. art. 138(3). The trial court, however, found Jan Shenk to be free from fault and ordered David Shenk to pay $1000 per month in permanent alimony.
The first issue presented by this appeal is whether the evidence supports the trial court's finding that Jan Shenk was free from fault in the dissolution of the marriage. The second issue on appeal is whether the award of $1000 per month in permanent alimony fits within the confines of Louisiana law.

FACTS
The Shenks were married in 1971 and thereafter moved to Florida where they lived for seven years. During the first 5 years of marriage there appeared to be no serious marital problems. David Shenk worked as a CPA and Jan Shenk obtained a Masters Degree from the University of Florida. There were no children born of the marriage though while in Florida the couple took in a pre-teenage `foster' child. This child lived with them until his admittance to Tulane University in New Orleans. The couple moved from Florida to Houston, Texas in 1980 in furtherance of Mr. Shenk's accounting career and in 1984 moved to New Orleans. Although there is conflicting testimony about the exact date sexual relations ceased, it appears relations ended some 8 to 12 years prior to trial.
Mr. Shenk testified that for 12 years prior to the divorce he and his wife never engaged in any sexual relationship. He testified that after requesting and being refused sex 3 or 4 times during the 12 year period he stopped asking. Mr. Shenk also testified that he was both jealous and suspicious of his wife's relationship with the teenage boy they had taken into their home.
Jan Shenk denied any inappropriate relationship with the teenage boy who lived with them. She admitted refraining from sexual relations with her husband for at least 8 years but presented evidence to justify her actions. Mrs. Shenk testified that while in Florida she suffered a series of urinary infections related to sexual intercourse and which resulted in surgery. She also testified that she had been a victim of sexual abuse as a child and that her abuser attempted to contact her by a letter which she received while living in Florida. Mrs. Shenk presented expert testimony relating to this traumatic childhood experience and evidence that the receipt of the letter triggered a response of depression and sexual retreat.
The trial court concluded in its written reasons for judgment that Mr. Shenk's actions in the last 8 to 12 years constituted consent to the lack of sexual relations. The lower court further found credence in expert testimony that Mrs. Shenk's refusal to engage in intercourse was likely rooted in the sexual abuse she suffered as a child. The court concluded that Jan Shenk's refusal to engage in sexual relations with her husband was justified by her mental illness which she sustained as a result of the sexual abuse suffered as a child.

FAULT
It is well established that absent sickness, consent or grave fault, refusal to engage in sexual intercourse with a spouse for a long period of time constitutes cruel treatment and entitles the nonreceiving spouse to a finding of fault on part of his *1003 or her spouse in the breakup of the marriage. Von Bechman v. Von Bechman, 386 So.2d 910 (La.1980); Bateman v. Larson, 452 So.2d 184 (La.App. 4th Cir.1984). It is also well established that the spouse alleging the refusal of sexual intercourse has the burden to show that there was persistent and unjustified refusal to engage in such intercourse. Von Bechman, supra.
In an attempt to establish that his wife's refusal to engage in sexual relations was both persistent and unjustifiable, Mr. Shenk presented evidence that after the fifth year of marriage sexual relations with his wife ceased to exist despite advances by him to engage in such activity. He testified that he initiated sex 3 or 4 times during the twelve year period but was refused each time. He also testified that after the last attempt he quit trying and decided to wait until his wife wanted sex "... and [she] was willing to initiate something."
Mrs. Shenk testified that her refusal to engage in sexual relations began while living in Florida. There as a result of sexual intercourse she suffered frequent urinary infections resulting in surgery. She testified that in 1980 the couple moved to Houston where they last engaged in sexual intercourse.
Mrs. Shenk presented expert testimony from Mark Gorkin, who counseled both Mr. and Mrs. Shenk before the breakup of their marriage. Mr. Gorkin is an expert in stress and burnout with extensive experience in both marriage counseling and sexual abuse counseling. He testified that along with the medical problem, another factor contributing to the couple's lack of intimacy stemmed from the earlier childhood incident in which Mrs. Shenk was sexually abused by a junior high school instructor. This experience, Mr. Gorkin testified, was a "significant contributing factor" for the lack of sexual intimacy between the couple. It was Mr. Gorkin's opinion that the main factors leading to the Shenks' extinguished sexual relationship were the rekindling of the traumatic childhood experience by the abuser's letter, Mrs. Shenk's medical problems in Florida, and the inability of the two parties to discuss their sexual problem.
Since there are many considerations between parties upon which such a private and sensitive act may depend, we, as other courts have wisely held previously, refuse to establish a quota for frequency of sexual contact, anything short of which would constitute grounds for fault in the dissolution of a marriage. In the case at bar, appellant testified that he approached his wife for sex only 3 or 4 times during a 12 year period. Persistent refusal to engage in sexual relations with a spouse for 12 years may arguably constitute cruel treatment. Here, however, the trial court found that Mr. Shenk failed to establish persistent refusal on the part of his spouse where he had only requested sexual relations 3 or 4 times in a twelve year period. We hold this finding not in error.
In addition, Mr. Shenk failed to overcome his wife's defense that the lack of sexual intimacy was caused by both a physical and mental condition. Actions of one spouse toward another that would normally constitute cruel treatment are excused when involuntarily induced by a preexisting physical or mental illness. Bettencourt v. Bettencourt, 381 So.2d 538 (La. App. 4th Cir.1980); Courville v. Courville, 363 So.2d 954 (La.App. 3rd Cir.1978). Significantly, at the time the sexual relationship began to falter Mrs. Shenk was having medical problems directly related to sexual intercourse. Moreover, shortly before or after their move to Houston, Mrs. Shenk received a letter from the person who abused her as a child. The rekindling of such a traumatic experience, the trial court found, directly contributed to her refusal to engage in sexual relations with her husband.
The trial court's finding of fact on the issue of fault will not be disturbed unless manifestly erroneous. Pearce v. Pearce, 348 So.2d 75 (La.1977). We are unable to find any error in the lower court's findings and must, therefore, affirm the judgment holding Jan Shenk free from fault in the dissolution of the marriage.

*1004 AMOUNT OF PERMANENT ALIMONY
Appellant next contends that the amount of permanent alimony awarded by the lower court is excessive. The trial court, however, is vested with much discretion in fixing the amount of alimony and such decisions are entitled to great weight. Anderson v. Anderson, 441 So.2d 413 (La. App. 4th Cir.1983).
An award of alimony after divorce is controlled by La.C.C. art. 160, which provides in pertinent part:
When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, alimony which shall not exceed one-third of his or her income.
* * * * * *
In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses, including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training, or employment; the health and age of the parties and their obligations to support or care for dependent children; any other circumstances that the court deems relevant.
Alimony after divorce is intended to provide the basic necessities of life, such as food, clothing and shelter. Volker v. Volker, 398 So.2d 134 (La.App. 3rd Cir.1981). It has also been interpreted to include reasonable transportation expenses, utility, household expenses and medical expenses. Anderson v. Anderson, supra. It has not, however, been interpreted to include expenditures for newspapers, gifts, day care, recreation, vacation and church tithes. Vorisek v. Vorisek, 423 So.2d 758 (La.App. 4th Cir.1982).
Mr. Shenk alleges that the permanent alimony awarded was excessive because it was based on excessive spending by Mrs. Shenk in order to support a lifestyle to which she was accustomed. Appellant specifically points to $495 in rent payments and $350 in medical expenses for her continued counseling under Mr. Gorkin. Appellant also takes issue with the miscellaneous expenses in which Mrs. Shenk list such personal expenses as newspaper and magazine, gifts, books and church dues, in addition to entertainment, travel and pet expenses. Appellant also points to a mathematical error made by Mrs. Shenk in totaling up her monthly expenses. This error was brought out at trial in testimony by Mr. Shenk.
We find no abuse of discretion in the trial court's consideration of the rent payments and the cost for continued counseling under Mr. Gorkin. If and when counseling ceases appellant may accordingly ask the court for a reduction in alimony payments. We also refuse to adjust the amount of alimony awarded on grounds of Mrs. Shenk's mathematical error since the lower court was apparently aware of the discrepancy when determining the amount of alimony awarded.
We do agree with appellant, however, that the miscellaneous expenses listed by Mrs. Shenk are impermissible expenses which are not to be considered when determining permanent alimony. We hold, therefore, that the lower court erred in considering such expenses and order permanent alimony be reduced to $800 per month.
For the foregoing reasons the decision of the trial court holding Jan Shenk free from fault in the dissolution of the marriage is affirmed and the amount of permanent alimony is reduced accordingly.
AFFIRMED IN PART; REVERSED IN PART.
BARRY, J., dissents with written reasons.
BARRY, Judge, dissents with written reasons.
Mrs. Shenk freely admitted that she refused to have sex with Mr. Shenk for 8 years and her refusal was not his fault. Mr. Shenk testified that it was 12 years *1005 and Mrs. Shenk's brief admits to 12 years. Either period of time is beyond the realm of the real world, or what constitutes a normal marriage by any standard. That raises a basic questiondoes each spouse have a mutual obligation to maintain a normal sexual relationship? Until I read the majority's view, I assumed the answer was an obvious YES.
Refusal to engage in sexual relations must be based on sickness, consent or grave fault to be justified. Schirrmann v. Schirrmann, 436 So.2d 1340 (La.App.5th Cir.1983), writs denied 440 So.2d 761 and 764 (1983). The burden of proof is on the party who alleges unjustified refusal. I am completely satisfied that Mr. Shenk met his burden, and that Mrs. Shenk failed to rebut with adequate evidence that she was "sick" or there was mutual consent for 8-12 years to abstain from a conjugal relationship. Grave fault is not at issue.
Mrs. Shenk's defense to her failure to have sex is twofold. She claims an episode of "child abuse" as a teenager and a urinary infection around 1980.
The child abuse story is totally unsubstantiated. The record provides no specifics or documentationno date, place, name nothing. Mrs. Shenk's suspect testimony concerning the letter she allegedly received from the "abuser" years later (well into the marriage) was contradicted. She claimed that she threw the letter away. Her therapist (a social worker) testified that Mrs. Shenk gave the letter to him. The letter was not produced at trial. The majority opinion refers to "... evidence that the receipt of the letter triggered a responsive depression and sexual retreat." There is no such evidence.
As to the urinary infection years earlier, there is no proof the condition was permanent, especially after corrective surgery. The record is void of medical support for this claim.
Mrs. Shenk's "expert" social worker's expertise was in "stress and burnout." He had no firsthand knowledge about the alleged incident when Mrs. Shenk was a teenager or about her urinary infection. He could only repeat what Mrs. Shenk told him.
The majority refers to Mrs. Shenk's "mental illness." Nothing in the record substantiates the use of that term.
It is incredible for the majority to conclude that "Mr. Shenk's actions in the last 8 to 12 years constituted consent to the lack of sexual relations." This deprived spouse "asked" to have sex 3 or 4 times, was flatly rejected, then hung in for years with a spouse who had rejected him. If Mr. Shenk had left his wife (a reasonable decision under these facts) the majority would have found him at fault.
The trial judge found "that the parties consented to abstain from having sexual intercourse." Who consented? Mr. Shenk never consented, he askedhis wife refused. Did Mrs. Shenk ever make an overt move to her husband. No.
The majority says Mr. Shenk did not prove "persistent" refusal to have intercourse. What amounts to "persistent" depends on the facts.
Importantly, Mrs. Shenk entered into a sexual relationship shortly after the divorce. That lends strong credence to my belief that her sexual "hangup" was a cover-up and a fabricated story.
C.C. art. 160 "contemplates conduct or substantial acts of commission or omission by a spouse violative of marital duties and responsibilities." (Emphasis added). The acts of omission by Mrs. Shenk in failing to respond to Mr. Shenk, or importantly, by any act of love toward her husband mandates that Mrs. Shenk be found at fault.
The civil and moral obligations of marriage are reciprocal. When one spouse failswhether male or femalethat spouse should bear the fault. In this case, Mrs. Shenk was rewarded.