420 S.E.2d 576

**Barbara Jane Clark LANGEVIN, Plaintiffs Below, Appellant,**

v.

**Harold Arthur LANGEVIN, Jr., Defendant Below, Appellee.**

No. 20076.

Supreme Court of Appeals of West Virginia.

Submitted April 7, 1992.

Decided June 26, 1992.

Hugh B. Rogers, Jr., Kerens, for appellant.

R. Mike Mullens, Elkins, for appellee.

PER CURIAM:

The appellant, Barbara Jane Clark Langevin, appeals the May 17, 1990 final order of the Circuit Court of Randolph County. That order adopted the findings of fact and conclusions of law found in the family law master's November 15, 1989 response to the trial court's August 10, 1989 order for remand. Appellant contends that the trial court erred in deviating from the child support guidelines in the absence of a showing in the record that such a deviation was contrary to the best interests of the children and the parties. We agree with appellant's contention and hold that the child support guidelines must be followed in this case.

On May 7, 1986, Mr. and Mrs. Langevin obtained a divorce due to irreconcilable differences. Mrs. Langevin was awarded custody of the parties' children: Jonathan, then age six, and Erin, then age three. A separation agreement entered into by the parties on May 1, 1986 was incorporated into the divorce decree. The separation agreement provided that in lieu of child support payments, Mr. Langevin would convey his undivided one-half interest in the marital home, as well as his interest in the kitchen appliances and furnishings therein, to Mrs. Langevin. The conveyance

was to "be considered as a lump sum payment of child support."

On August 14, 1988, Mrs. Langevin filed a "petition to establish child support" with the trial court. The petition alleged that the child support allocation made in the original separation agreement had been exhausted, and asked that the trial court establish and award a fair amount of child support to Mrs. Langevin.

A hearing was held before the family law master, and on March 16, 1989, a recommended decision was issued. The recommended decision acknowledged that the parties had stipulated that under the child support guidelines, Mr. Langevin would owe child support of $275.00 per month.[1] Without elaborating, the family law master recommended "that a fair and equitable amount of child support is $225.00 per month." [2]

The family law master also heard testimony concerning the value of Mr. Langevin's conveyance of a one-half interest in the marital home to Mrs. Langevin. Both parties presented expert testimony opining a value of the home as of the date of the separation agreement. Mr. Langevin's expert opined the value of the home at $44,280.00 as of May, 1986. Mrs. Langevin's expert opined a value of $38,500.00. Mr. Langevin himself testified to a value of $48,700.00. The parties owed $26,800.00 on the home to a trust company by way of a secured loan, and $3,000.00 to Mrs. Langevin's mother (pursuant to a loan made by the mother to the parties for a down payment on the home) by way of an unsecured loan. The family law master accepted the value of the home as determined by Mr. Langevin's expert.[3] The family law master further recommended that Mrs. Langevin pay the family law master fee and that each party should pay the cost of their own representation and witness expenses.

Mrs. Langevin thereafter filed a petition for review with the Circuit Court of Randolph County. By order entered August 10, 1989, the trial court remanded the decision to the family law master "to make detailed and written findings in accordance with *W. Va. Code*, 48A–2–8 [1989] as to why the amount of child support awarded, deviates from the Child Support Guidelines." [4]

---

1. In syllabus point 2 of *Wyant v. Wyant*, 184 W.Va. 434, 400 S.E.2d 869 (1990), we stated:
    In order to facilitate appellate review of child support recommendations or orders, family law masters and/or circuit court judges must include as part of the record the worksheets reflecting the actual calculations which result from the application of the child support guidelines to the facts of a particular case.
    *Wyant* was decided after the final order of the trial court in this action, but we are compelled to note that no such worksheets were supplied to this court upon review. Therefore, we must rely on the stipulation by the parties that, were the guidelines applied, Mr. Langevin would be obligated to pay $275 per month.

2. The family law master noted that Mr. Langevin had contended that because of his financial status, he could pay no more than $200.00 per month.

3. The recommended decision states: "That using the figure of [Mr. Langevin's] expert, ... and not allowing for payment of the debt to [Mrs. Langevin's] mother, the parties total equity in 1986 was $17,480.00 or $8,740.00 each, or a little more than $645.00 than the amount stipulated by the parties as what reasonable support should have been." The recommended decision thereafter stated: "That at this time as a matter of fact and law, the Family Law Master concludes that the parties are even and that [Mr. Langevin] has exhausted the equity in the marital domicile conveyed to [Mrs. Langevin]."

    There was no testimony or discussion in the record as to the value of the kitchen appliances and furnishings which were included in the separation agreement as part of the "lump sum" child support payments by Mr. Langevin. Neither party addressed that issue before this Court.

4. *W.Va.Code*, 48A–2–8 [1989] states, in pertinent part:
    There shall be a rebuttable presumption, in any proceeding before a family law master or circuit court judge for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case. The guidelines shall not be followed:
    (1) When the child support proposed to be made pursuant to the guidelines has been disclosed to the parties and each party has made a knowing and intelligent waiver of said

Among the findings of fact made by the family law master upon remand were:

II. The financial status of the defendants [sic] was initially set forth as a reason for avoiding a strict application of the guidelines. It is your master's recollection that defendant had numerous expenses and debts. Defendant stated that if child support must be paid he could afford no more than $200.00.

. . . .

IV. The fact that the parties had, initially, a lump sum child support agreement wherein plaintiff received defendant's equity in the marital home in place of normal child support was a reason for deviation from the guidelines. Defendant felt that he had totally satisfied his obligation for child support by reason of his surrender of the equity in the home. When this position failed to find support in law, [citation omitted] [5] your Master, in part, compromised the child support and avoided guidelines. Your Master attempted to balance current equities with the parties original intention.

V. The Recommended Decision of 16 March 198[9] was made before *Holley v. Holley,* [181 W.Va. 396, 382 S.E.2d 590] (1989) was announced by the Supreme Court of Appeals. Application of the standards set forth in *Holley* may well have produced a different recommended decision.

In essence, then, the family law master ruled that because the parties had entered into a "lump sum child support agreement," and because Mr. Langevin believed that agreement negated future child support obligations, in combination with Mr. Langevin's assertion that he could afford no more than $200.00 in child support per month, sufficient justification for deviation

from the child support guidelines was shown.

The final order of the Circuit Court of Randolph County was thereafter entered on May 17, 1990. That final order incorporated all of the findings of fact and conclusions of law of the family law master and ordered Mr. Langevin to pay monthly child support of $225.00. The trial court briefly expanded on the reasons for its deviation from the child support guidelines by finding that the deviation was the result "of the economic circumstances of the parties." No explanation of those "economic circumstances" was given. Mrs. Langevin then appealed to this Court.

On appeal, Mrs. Langevin asserts that the trial court erroneously neglected to value the marital home and Mr. Langevin's equity therein, deviated from the child support guidelines, and failed to award attorney's fees and costs to Mrs. Langevin. Mrs. Langevin seeks an increase of child support to the amount mandated by the child support guidelines.

I

In syllabus point 1 of *Bettinger v. Bettinger,* 183 W.Va. 528, 396 S.E.2d 709 (1990), we stated:

A measure of discretion is accorded to a family law master in making value determinations after hearing expert testimony. However, the family law master is not free to reject competent expert testimony which has not been rebutted. This statement is analogous to the rule that ' "[w]hen the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence,

---

amount, and the support obligors have entered into an agreement which provides for the custody and support of the child or children of the parties; or

(2) When the child support award proposed to be made pursuant to the guidelines would be contrary to the best interests of the child or children, or contrary to the best interests of the parties.

**5.** In the initial recommended decision, the family law master found:

That under the doctrine annunciated [sic] in *Stewart v. Stewart,* [177 W.Va. 253], 351 S.E.2d 439 (W.Va., 1986), despite the fact that the parties have agreed to a lump sum child support settlement which has been ratified and confirmed by this Court, when said child support included in the lump sum award based upon the surrender of equity in a home is exhausted, monthly child support payments in some amount must eventually be required.

or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review." ' Syllabus Point 1, in part, *George v. Godby*, 174 W.Va. 313, 325 S.E.2d 102 (1984), *quoting* Syllabus Point 4, *Smith v. Godby*, 154 W.Va. 190, 174 S.E.2d 165 (1970).

Despite her assertion that the trial court failed to value the marital home, it is abundantly clear that Mrs. Langevin's argument must fail. The family law master considered the evidence and accepted the value placed on the home by Mr. Langevin's expert. He based his calculations and findings upon the stipulations of the parties as to what amount of past child support should have accrued, and the testimony of the experts relating to the value of the marital home. The family law master thus concluded that the parties were "even" and that Mr. Langevin's equity in the marital home had been exhausted. These findings and conclusions were incorporated into the trial court's final order. We find that the family law master's valuation of the property and his finding that the parties were "even" as far as the related child support obligations, were supported by the evidence and not plainly wrong.

## II

In the syllabus of *Stewart v. Stewart*, 177 W.Va. 253, 351 S.E.2d 439 (1986) we stated:

'Under the provisions of W.Va.Code, 48–2–15, as amended, jurisdiction to provide for the support, maintenance and education of a minor child is not abrogated or limited by the existence of child support provisions in a property settlement agreement which has been "ratified and confirmed" in a divorce decree.' Syl. Pt. 2, *State ex rel. Trembly v. Whiston*, 159 W.Va. 298, 220 S.E.2d 690 (1975).

In this case the family law master recognized that the child support provisions in the parties' property settlement agreement, which had been ratified and confirmed by the trial court, could not "abrogate" his jurisdiction to order "child support payments in some amount" once appellee's equity in the marital home had been exhaust-

ed. Nonetheless, the family law master recommended, and the trial court accepted and incorporated into its order, the reasoning that such child support provisions in the instant property settlement agreement were relied upon by the appellee, and therefore it was only equitable that appellee not be required to make payments at the rate required by the guidelines.

The existence of child support provisions in a property settlement agreement, however, may neither abrogate *nor limit* the jurisdiction of a trial court to make an order providing for the "support, maintenance and education" of minor children. *Stewart v. Stewart, supra.* The trial court limited the appellee's child support responsibilities because of the property settlement agreement. Such limitation for the reason stated was both improper and erroneous.

The family law master also cited the "financial status" of the appellee as another reason for limiting the applicability of the guidelines. Although the family law master did not elaborate on the facts behind why the "financial status" of the parties should be grounds for deviating from the guidelines, it appears that he relied on appellee's testimony that he could only afford $200.00 per month and appellee's "numerous expenses and debts." Mr. Langevin, however, also testified that he did not believe that his expenses were more important than paying child support.

In syllabus point 1 of *Wood v. Wood*, 184 W.Va. 744, 403 S.E.2d 761 (1991), we restated the general rule, holding that family law masters and circuit courts must apply the established guidelines in any award or modification of child support. We stated:

'When a family law master or a circuit court enters an order awarding or modifying child support, the amount of the child support shall be in accordance with the established state guidelines, set forth in 6 *W.Va.Code of State Rules* §§ 78–16–1 to 78–16–20 (1988).' Syllabus, in part, *Holley v. Holley*, 181 W.Va. 396, 382 S.E.2d 590 (1989).

In syllabus point 3 of *Gardner v. Gardner*, 184 W.Va. 260, 400 S.E.2d 268 (1990), we stated:

> Once a family law master or circuit court finds that a party has shown a change of circumstances justifying modification of child support, the amount of child support shall be in accordance with the child support guidelines established pursuant to *W.Va.Code*, 48A–2–8(a) [1989], unless the family law master or the court shall determine, in a written finding or a specific finding on the record, that the application of the guidelines would be either unjust, inappropriate, waived by the parties pursuant to the safeguards outlined in *W.Va.Code*, 48A–2–8(a)(1) [1989], or contrary to the best interests of the children or the parties.

In this case there has been no finding by either the family law master or the trial court that application of the guidelines would be either "unjust or inappropriate." Indeed, the record does not support such a finding, and the family law master, in response to the trial court's order for remand, went so far as to state that, had he applied our ruling in *Holley v. Holley*, 181 W.Va. 396, 382 S.E.2d 590 (1989), such application "may well have produced a different recommended decision."[6] In *Holley*, as in *Gardner*, we noted when the guidelines may be disregarded.[7] Therefore, when applying syllabus point 3 of *Gardner* to the instant case, we find that the reasons stated for deviating from the guidelines do not meet the standard of being either "unjust, inappropriate, waived by the parties pursuant to the safeguards outlined in *W.Va.Code*, 48A–2–8(a)(1) (1989) or contrary to the best interests of the children or the parties." Child support must therefore be awarded to the appellant in the amount required by the guidelines.

## III

Mrs. Langevin also argues that she should be awarded attorney's fees and costs. She argues that our ruling in *Bettinger* supports the contention that an award should be made because she had to appeal to this Court. Syllabus point 14 of *Bettinger* states: "The purpose of W.Va. Code, 48–2–13(a)(4) (1986), is to enable a spouse who does not have financial resources to obtain reimbursement for costs and attorney's fees during the course of the litigation." There is nothing in the record before this Court suggesting that Mrs. Langevin does not have the financial resources to pay her costs and attorney's fees pursuant to this action, nor does counsel for Mrs. Langevin argue that she lacks such resources. Therefore, Mrs. Langevin must bear her own attorney's fees and costs.

Based upon the foregoing, the May 17, 1990 final order of the Circuit Court of Randolph County is affirmed, in part, reversed, in part, and remanded for proceedings consistent with this opinion.

Affirmed, in part; reversed, in part, and remanded with directions.

---

**6.** Our decision in *Holley* occurred after the family law master's initial recommended decision in this case, but before the trial court's order for remand.

**7.** In *Holley* we stated:

[T]he guidelines themselves refer to when the formula therein may be disregarded. If, after computing the amount of a child support award in accordance with the guidelines, the family law master or circuit court determines that the application of the support guidelines 'are inappropriate as being contrary to the best interests of the children and the parties,' the master or court 'may disregard the formula and not follow the guidelines. In such instance, the court or master shall set forth, in writing, the reasons for not following the guidelines in the particular case involved.' 6 *W.Va.Code of State Rules* § 78–16–19 (1988). (footnote omitted). 181 W.Va. at 398, 382 S.E.2d at 592.