575 S.E.2d 299

**In re the Marriage of Duane E. DRENNEN, Plaintiff Below, Appellee,**

v.

**Pamella Lottie DRENNEN, Defendant Below, Appellant.**

**No. 30628.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 13, 2002.

Decided Dec. 3, 2002.

Dissenting and Concurring Opinion of Chief Justice Davis Dec. 6, 2002.

---

James M. Pierson, Pierson Legal Service, Charleston, for the Appellee.

James T. Cooper, Cooper & Glass, Charleston, for the Appellant.

## PER CURIAM.

This is an appeal by Pamella L. Drennen (hereinafter "Appellant") from a divorce order of the Circuit Court of Kanawha County failing to provide the Appellant with an alimony award. The Appellant also challenges the lower court's distribution of certain credits to her former husband, Duane Drennen (hereinafter "Appellee") in equitable distribution, the granting of ownership of the marital home to the Appellee, and the alleged failure of the lower court to provide the Appellant with adequate attorney's fees. Upon thorough review of the briefs, record, and arguments of the parties, we find that the lower court committed error in failing to grant the Appellant an alimony award. We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

### I. Facts

The parties were married on February 12, 1987, and lived together until January 29, 1999. There were no children born of the marriage. The Appellant has retained sole use and occupancy of the marital home since January 29, 1999. The Appellee filed a complaint seeking a divorce on the grounds of irreconcilable differences in February 1999. Hearings were conducted by Family Law Master Charles Phalen, Jr., on September 19, 1999, November 3, 1999, and March 16, 2000. A temporary order was entered December 10, 1999, by Family Law Master Phalen providing that the Appellant would continue to have temporary exclusive use and

possession of the former marital home and pay the utilities associated therewith. The December 1999 temporary order further stated that the Appellee would continue to pay scheduled mortgage payments and the home equity loan payments. The order directed the Appellee to obtain through the home equity line of credit the sum of $2,000.00 to be delivered to the Appellant. That money was to be utilized for the Appellant's monthly needs and expenses. The family law master explicitly stated as follows:

> [T]he Court will determine in its final order as to whether some or all of this money shall be characterized as temporary alimony or equitable distribution; further, that in the event this money is not sufficient to meet the needs of Defendant [Appellant] until a final hearing can be completed, Defendant [Appellant] shall have the option of requesting the Court for additional temporary relief.

Additional hearings were conducted by Family Law Master Robert Montgomery on September 14, 2000, October 13, 2000, November 21, 2000, and December 1, 2000.[1]

The evidence adduced at the hearings indicates that the Appellant is forty-seven years of age and has earned a high school diploma. Although she was employed as a secretary during the early part of the marriage, she discontinued that employment on June 1, 1995, due to health problems. Evidence indicated that the sexual relationship between the parties was greatly suppressed subsequent to the Appellant's vaginal cuff surgery in the early 1990's and that the parties had not had frequent sexual relations thereafter.[2] since February 14, 1991. Evidence also indicated that the Appellant rarely attended social or family functions with the Appellee during the last several years of the relationship. In April 2000, she received a favorable ruling from the Social Security Administration on her application for disability benefits, based upon "medically determinable severe impairments: major depression, anxiety with panic attacks and irritable bowel syndrome."[3] She received a lump sum award for back social security benefits in the amount of $19,016.23, and a net monthly social security benefit of $881.00,[4] which is her sole source of income. The Appellant contends that her living expenses are $1,710 per month.[5]

The Appellee has been employed as a deputy sheriff in Kanawha County since 1970, and he has earned both an associate and a bachelor of science degree. The Appellee is fifty-eight years of age and has continued to engage in his employment as a deputy sheriff, despite complaints of various medical problems.[6] Financial statements indicate that the Appellee's gross monthly salary was $3,657.36. At the time the Appellee's financial statement was filed on March 29, 1999, the Appellee's net monthly salary was $2,355.46.

By order dated June 13, 2001, Family Law Master Robert Montgomery issued a recommended order denying the Appellant an ali-

1. During the pendency of this appeal, the family law master system ceased to operate, effective January 1, 2002, and was replaced by a system of family court judges. *See* W. Va.Code § 51–2A–23 (2000) (Supp.2002). The proceedings in this case all occurred under the family law master system, and we consequently refer to Robert Montgomery, currently a family court judge, as a family law master.

2. According to the Appellant's testimony, the vaginal cuff surgery entailed "partial removal of the vaginal cuff with scar tissue and bleeding and endometriosis." The Appellant testified that the last sexual relations occurred in 1997, but the Appellee testified that sexual relations ceased in 1991.

3. The record reflects a history of depression for which the Appellant was first hospitalized in 1989. She was hospitalized in March 1994 with major depression and panic disorder. She has been under continuing psychiatric care and has also visited the emergency room on several occasions with symptoms of depression and anxiety.

4. The Appellant's monthly award is $927.00, from which $45.50 is subtracted for insurance premiums, resulting in a net monthly award of $881.00, since the monthly amount is rounded down to a whole dollar.

5. The Appellee maintains that the Appellant has inflated her estimate of monthly living expenses by including the home mortgage amount which she will not have to pay.

6. The Appellee states that he suffers from bulging disks, stenosis in his back, high cholesterol, high blood pressure, and arthritis.

mony award, granting possession of the marital home to the Appellee, and determining equal distribution by subtracting $7,350.00 in "offsets" from the Appellant's share of equity in the marital home,[7] leaving a payment of $9,402.89 as equitable distribution to the Appellant. These offsets included $1,050.00, as the Appellee's half of a $2,100.00 tax refund for 1998; $1,000.00 as the Appellee's half of a $2.000.00 joint marital account fund; $3,300.00 as an additional amount paid by the Appellee to the Appellant after separation; and $2,000.00 for a loan ordered in the temporary order to be used for monthly expenses by the Appellant. By order dated October 3, 2002, the circuit court approved the recommended order, and the Appellant now appeals that decision.

On appeal, the Appellant contends that the lower court erred by failing to award alimony, by failing to grant the Appellant possession of the marital home, and by erroneously calculating the equitable distribution to which she is entitled.

## II. Standard of Review

 This Court has consistently reviewed matters of this nature under an abuse of discretion standard. In syllabus point one of *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995), this Court explained:

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly

erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

With regard to challenges regarding alimony, this Court also reviews the lower court's determinations under an abuse of discretion standard. In the syllabus of *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977), this Court held that "[q]uestions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." In *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996), this Court provided as example of the three principal manners through which such an abuse of discretion might arise:

> An abuse of discretion occurs in three principal ways: (1) when a relevant factor that should have been given significant weight is not considered: (2) when all proper factors, and no improper ones, are considered, but the family law master in weighing those factors commits a clear error of judgment: and (3) when the family law master fails to exercise any discretion at all in issuing the order.

*Id.* at 548, 474 S.E.2d at 478.

## III. Discussion

### A. Alimony

 West Virginia § 48–2–16 (1999) provided an extensive list of factors to be considered in determining the necessity and extent of an alimony award.[8] In syllabus point two

---

7. Each party's share of equity value in the marital home was determined to be $16,752.89.

8. West Virginia Code § 48–2–16 was essentially transferred in its entirety to West Virginia Code § 48–6–301 upon redesign of the domestic relations legislative enactments in 2001. The primary difference between the 1999 and 2001 versions is the substitution of the phrase "spousal support" for the antiquated term "alimony." Under § 48–2–16(b), applicable to the divorce in the present case, factors to be considered in awarding alimony, child support or separate maintenance are identified as follows:

> The court shall consider the following factors in determining the amount of alimony, child support or separate maintenance, if any, to be

ordered under the provisions of sections thirteen and fifteen of this article, as a supplement to or in lieu of the separation agreement:
(1) The length of time the parties were married;
(2) The period of time during the marriage when the parties actually lived together as husband and wife;
(3) The present employment income and other recurring earnings of each party from any source;
(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

694

of *Yanero v. Yanero*, 171 W.Va. 88, 297 S.E.2d 863 (1982), this Court explained: "By its terms, *W.Va.Code* § 48–2–16 [1976] requires a circuit court to consider the financial needs of the parties, their incomes and income earning abilities and their estates and the income produced by their estates in determining the amount of alimony to be awarded in a modification proceeding."

■ With regard to the relative degrees of fault of the parties and the potential impact upon alimony, West Virginia Code § 48–2–15(i) (1999) provides, in pertinent part, as follows:

> In determining whether alimony is to be awarded, or in determining the amount of alimony, if any, to be awarded under the provisions of this section, the court shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship.

In syllabus point two of *Rexroad v. Rexroad*, 186 W.Va. 696, 414 S.E.2d 457 (1992), this Court examined West Virginia Code § 48–2–15(i) and held:

> (5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two [§ 48–2–32] of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance: Provided, That for the purposes of determining a spouse's ability to pay alimony, the court may not consider the income generated by property allocated to the payor spouse in connection with the division of marital property unless the court makes specific findings that a failure to consider income from the allocated property would result in substantial inequity;
>
> (6) The ages and the physical, mental and emotional condition of each party;
>
> (7) The educational qualifications of each party;
>
> (8) Whether either party has foregone or postponed economic, education or employment opportunities during the course of the marriage;
>
> (9) The standard of living established during the marriage;
>
> (10) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her

W.Va.Code, 48–2–15(i) (1991), bars a person from alimony in only three instances: (1) where the party has committed adultery; (2) where, subsequent to the marriage, the party has been convicted of a felony, which conviction is final; and (3) where the party has actually abandoned or deserted the other spouse for six months. In those other situations where fault is considered in awarding alimony under W.Va.Code, 48–2–15(i), the court or family law master shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship.

We reiterated in *Banker* that "[a]bsent a finding of a statutory bar to alimony or a finding of substantial fault or misconduct on the part of the spouse seeking alimony," the issue is to be resolved on the basis of the relative financial positions of the divorcing spouses. 196 W.Va. at 541, 474 S.E.2d at 471. This consideration of relative fault, within the context of determining an alimony award, was also discussed in *F.C. v. I.V.C.*, 171 W.Va. 458, 300 S.E.2d 99 (1982), and this Court explained that "even in consensual divorces, where fault or blamelessness is not an issue in determining which spouse shall be

> income-earning abilities within a reasonable time by acquiring additional education or training;
>
> (11) Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party;
>
> (12) The anticipated expense of obtaining the education and training described in subdivision (10) above;
>
> (13) The costs of educating minor children;
>
> (14) The costs of providing health care for each of the parties and their minor children;
>
> (15) The tax consequences to each party;
>
> (16) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;
>
> (17) The financial need of each party;
>
> (18) The legal obligations of each party to support himself or herself and to support any other person;
>
> (19) Costs and care associated with a minor or adult child's physical or mental disabilities; and
>
> (20) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.

charged with alimony, consideration may be given to the inequitable conduct of one party to determine what is a just and equitable alimony award." 171 W.Va. at 460, 300 S.E.2d at 101.

■ In the present case, there is no statutory bar to alimony since there is no evidence that the Appellant has committed adultery, been convicted of a felony subsequent to the marriage, or has actually abandoned or deserted the Appellee for six months. In failing to grant the Appellant an alimony award, it appears that the lower court committed an abuse of discretion by inappropriately weighing the Appellant's perceived fault or inequitable conduct in contributing to the deterioration of the marriage and in denying her an alimony award on that basis. In its October 3, 2001, order the lower court explained: "That while a divorce should be granted on the grounds of irreconcilable differences, the Court finds that there was substantial inequitable conduct on the part of the Defendant which led to the breakdown of the marital relationship." The lower court did not elaborate upon what precise factors it considered "inequitable conduct," but did comment in its general factual findings, as follows: "That the Plaintiff testified at the insistence of the Defendant the parties last had sexual relations eight years prior to separation on February 14, 1991 and the Defendant testified that sexual intercourse was rare after a vaginal cuff surgery in the mid 1990's and terminated completely since 1997[.]" The lower court also stated: "That in the early to mid 1990's the Defendant reduced her other marital activities, and non economic contributions to the marital estate, including a reduction in homemaker services and a reduction in social and emotional involvement with the Plaintiff, his family and his career[.]"

With regard to the denial of an alimony award, the lower court further stated as follows:

That after consideration of all of the factors contained in West Virginia Code 48–2–16 including, but not limited to, the fact that the Defendant shall retain all of her social security award, receive equitable distribution payment of $9,402.89, receive retirement benefits pursuant to a subsequent QDRO within the maximum of less than 8 years, and division of the marital debts which shall leave the Plaintiff debt-free, the payment of alimony is not appropriate in this case.

Upon our review of this matter, we find that the lower court abused its discretion by finding substantial inequitable conduct by the Appellant and in utilizing that judgment in the denial of alimony. The absence of marital physical relations, failure to attend family functions, and inattentiveness to household chores are insufficient bases for a total denial of an alimony award in a case in which the financial disparity between the parties is substantial. Other courts dealing with failure to engage in physical relations due to health-related issues have concluded that such inactivity cannot be characterized as fault or inequitable conduct when determining rights upon divorce. In *Doane v. Benenate*, 671 So.2d 523 (La.App. 4th Cir. 1996), for instance, Mr. Doane testified he left the marital home because the marriage and sexual relations had declined. 671 So.2d at 524. Mr. Doane claimed that Mrs. Doane's expressions of lack of love and her requests that he leave the domicile support the finding that Mrs. Doane was at fault. Mrs. Doane contended that her conduct was caused by mental illness, and the court concluded that "[a]ctions of one spouse toward another that normally constitutes cruel treatment are excused when involuntarily induced by a preexisting physical or mental illness." *Id.* at 424–25, citing *Shenk v. Shenk*, 563 So.2d 1000, 1003 (La.App. 4th Cir.1990).

In *Shenk*, the Louisiana court addressed the issues of the sexual relationship of parties to a divorce and held that

[s]ince there are many considerations between parties upon which such a private and sensitive act may depend, we, as other courts have wisely held previously, refuse to establish a quota for frequency of sexual contact, anything short of which would constitute grounds for fault in the dissolution of a marriage.

563 So.2d at 1003; *see also Bettencourtt v. Bettencourtt*, 381 So.2d 538 (La.App. 4th Cir. 1980), writ denied 383 So.2d 12 (La.1980); *Courville v. Courville*, 363 So.2d 954 (La.

App. 3rd Cir.1978), writ denied 365 So.2d 243 (La.1978). The *Shenk* court analyzed the basis for Mrs. Shenk's reluctance to engage in a sexual relationship and noted:

> Significantly, at the time the sexual relationship began to falter Mrs. Shenk was having medical problems directly related to sexual intercourse. Moreover, shortly before or after their move to Houston, Mrs. Shenk received a letter from the person who abused her as a child. The rekindling of such a traumatic experience, the trial court found, directly contributed to her refusal to engage in sexual relations with her husband.

563 So.2d at 1003.

In further justifying the denial of an alimony award in the present case, the lower court explained that the Appellant was permitted to retain her $19,016.25 social security disability award and her monthly social security disability benefits. However, the lower court appears to have disregarded the fact that those monthly benefits may not continue indefinitely, based upon the review to which such award will be subjected every three years. Of potentially greater impact upon the Appellant's financial endurance is the fact that the retirement benefits to which she is entitled may not begin until 2008. In circumstances of this nature, an award has sometimes been granted, allowing an individual to obtain a temporary alimony award, payable only until such time as other identified benefits are imparted. In *McGraw v. McGraw*, 186 W.Va. 113, 411 S.E.2d 256 (1991), for instance, this Court approved such an award for the period between divorce and eligibility for retirement benefits at age 62. "The alimony awarded to Mrs. McGraw is not to rehabilitate her but rather to assure her of income until her retirement benefits begin." 186 W.Va. at 117, 411 S.E.2d at 260.

The situation in the present case is also complicated by the fact that payments ordered to be paid by the Appellee to the Appellant while the divorce was pending were later charged against the Appellant as offsets to her share of the marital home equity, despite the fact that the order granting such amounts states that consideration would later be given to the issue of whether such payments should fairly be characterized as alimony, equitable distribution, or otherwise. As referenced above, the offset of $7,350.00 included $1,050.00, as the Appellee's half of a $2,100.00 tax refund for 1998; $1,000.00 as the Appellee's half of a $2,000.00 joint marital account fund; $3,300.00 as an amount paid by the Appellee to the Appellant after separation; and $2,000.00 for loan taken by the Appellant. Upon remand, the lower court should determine an appropriate alimony award, giving complete consideration and explanation to the interplay among the lump sum social security payment, the uncertainty of future monthly social security payments, the absence of retirement benefits until possibly 2008, the payments of temporary support between the parties' separation and the final order, and other matters as deemed necessary by the lower court.

We also direct the lower court to conduct further hearings, if additional evidence is deemed necessary. We note that the parties apparently submitted their individual recommended findings of fact and conclusions of law to the family law master and did not have an opportunity to review or rebut the contentions of the opposing party prior to final decision of the family law master. Moreover, upon the Appellant's filing of exceptions to the recommended order, the lower court, by order dated October 3, 2001, held that further hearing was "not necessary in order for the Court to make a decision in this matter." On remand, consideration should be given to permitting the parties an opportunity to consider and rebut the opponent's positions.

### B. The Marital Home

■ Our review of the lower court's award of the marital home to the Appellee reveals no abuse of discretion. While this Court recognizes that the Appellant maintains a significant degree of emotional attachment to the marital home and empathizes with her in the desire to maintain her current residence, the appropriate standard of review limits this Court's ability to overturn the lower court's determinations. Only upon a finding of abuse of discretion can this Court reverse the lower court. "Ordinarily, when a circuit court is afforded discretion in making a decision, this Court accords great deference to

the lower court's determination." *Rollyson v. Jordan*, 205 W.Va. 368, 379, 518 S.E.2d 372, 383 (1999). We find no abuse of discretion in the lower court's determination that the Appellee is entitled to continued possession of the marital home and affirm in that regard. However, as explained above, other components of the equitable distribution plan may be altered on remand during the lower court's reassessment of the Appellant's award of alimony.

## C. Attorney Fees

The lower court awarded the Appellant $1,500.00 in counsel fees, expert fees, and costs. The Appellant contends that such award is insufficient to cover her $8,411.39 in expenses involved in this litigation. In syllabus point four of *Banker*, this Court explained:

In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

196 W.Va. at 538, 474 S.E.2d at 468.

West Virginia Code § 48–2–13(a)(6)(A)(1993) (Repl.Vol.1999) [9] explains that "[t]he court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party ... to prosecute or defend the action in the trial court." In syllabus point fourteen of *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990), this Court stated that "[t]he purpose of W.Va.Code, 48–2–13(a)(4) (1986) [prior statutory cite for West Virginia Code § 48–2–13(a)(6)(A) ]is to enable a spouse who does not have financial resources to obtain reimbursement for costs and attor-

ney's fees during the course of the litigation." This Court also noted in *Bettinger* that in determining fee awards, "the court should look to the income of the spouses at the time of the final decree." 183 W.Va. at 543, 396 S.E.2d at 724.

This Court has clearly stated that the principal inquiry must be the financial circumstances of the parties. In *Langevin v. Langevin*, 187 W.Va. 585, 420 S.E.2d 576 (1992), for example, we explained that determination of appropriate attorney's fees is to be based upon the financial resources of the parties. 187 W.Va. at 590, 420 S.E.2d at 581. Likewise, in *Smith v. Smith*, 187 W.Va. 645, 420 S.E.2d 916 (1992), we stated that "[t]he touchstone of the award is that one spouse has a significantly higher income than the other." 187 W.Va. at 650, 420 S.E.2d at 921. *See also Wharton v. Wharton*, 188 W.Va. 399, 405–06, 424 S.E.2d 744, 750–51 (1992).

On remand, the lower court should readdress the issue of the Appellant's entitlement to a greater award of attorney fees, in light of the disparity in income between the Appellant and the Appellee and additional fees incurred in the successful appeal to this Court.

## IV. Conclusion

Based upon the foregoing, we reverse the decision of the Circuit Court of Kanawha County denying the Appellant an alimony award; we affirm the decision regarding possession of the marital home; and we remand with instructions to reassess the various components of equitable distribution in conjunction with a determination of the appropriate amount of alimony. We also direct the lower court to determine the attorney fees to which the Appellant is entitled.

Affirmed in part, reversed in part, and remanded with directions.

DAVIS, C.J., concurring, in part, and dissenting, in part.

(Filed Dec. 6, 2002)

In this appeal, the majority opinion affirmed the trial court's ruling awarding the parties' marital home to Mr. Drennen. As to this issue, I concur in the majority's ruling.

---

9. West Virginia Code § 48–2–13(a)(6)(A) in effect during the pendency of this action was recodified at West Virginia Code § 48–5–504(a) (2001).

The only alteration in the 2001 version is that the phrase "in the trial court" was omitted.

However, the majority opinion reversed both the trial court's ruling denying alimony and the trial court's ruling on attorney's fees and credits given to Mr. Drennen in the equitable distribution of marital property. As to the majority's rulings on the latter three issues, I dissent.

In my review of the full record in this case, I found no evidence showing that the circuit court abused its discretion in resolving the issues concerning equitable distribution of marital property, alimony and attorney's fees. Moreover, there was no evidentiary showing that the circuit court's factual findings were clearly erroneous. In the absence of such evidence, this Court is precluded from disturbing the circuit court's ruling. *See* Syl. pt. 1, in part, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995) ("[A] final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard[.]").

I must, therefore, dissent from the majority's decision to reverse the circuit court's well-reasoned and factually supported rulings on the issues of alimony, equitable distribution of marital property and attorney's fees. I am authorized to state that Justice Maynard joins me in this separate opinion.