564 So.2d 770 (1990)
Dr. Robert J. MASSINGILL, Plaintiff-Appellant,
v.
Gilda MASSINGILL, Defendant-Appellee.
No. 21516-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 1990.
*771 Cotton, Bolton, Hoychick & Doughty by John Hoychick, Jr., Rayville, for plaintiff-appellant.
Theo J. Coenen, III, Rayville, for defendant-appellee.
Before MARVIN, SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
Dr. Robert J. Massingill, the plaintiff, appeals from a trial court judgment which he contends inadequately reduced his child support and alimony payments. We affirm.

FACTS
Dr. Massingill and Gilda Massingill were married on March 24, 1979. Of this marriage, one child, Kayla Elizabeth Massingill, was born on August 15, 1981. On October 30, 1985, the parties separated. Subsequently, Mrs. Massingill filed suit for legal separation. Pursuant to a rule for custody and support, a judgment was rendered on February 26, 1987, granting Mrs. Massingill sole custody of Kayla. Dr. Massingill was ordered to pay alimony of $800 per month and child support of $700 per month. Additionally, Dr. Massingill was *772 ordered to pay the monthly lease on Mrs. Massingill's car and her auto insurance. He was also ordered to maintain health insurance coverage on both Kayla and Mrs. Massingill.
On November 21, 1986, Dr. Massingill filed suit for divorce. The divorce was granted by judgment signed on April 16, 1987. On the issues of child custody and support, as well as permanent alimony, the judgment of divorce incorporated the provisions of the February, 1987, judgment in Mrs. Massingill's separation suit.
On May 3, 1989, Dr. Massingill filed a rule to modify alimony and child support. He asserted a change in his circumstances. It was Dr. Massingill's intent to leave his practice as an internist in Richland Parish, and reenter medical school to become board-certified in the fields of hematology and oncology. He contended that his present income of $130,000 could be doubled as a result of his additional studies. He also maintained that he had substantial debts which exceeded his assets.
In conjunction with his plan to obtain additional education, Dr. Massingill was awarded a hematology/oncology fellowship at the LSU School of Medicine in Shreveport, Louisiana. The fellowship grant provided for an annual salary of $23,900 for the two to three years he would be in the fellowship program. Dr. Massingill contended that his former wife was now employed and able to contribute to the support of the child. He requested reduction of his support obligations. Dr. Massingill asked that alimony be reduced to the sum of $100 per month and child support be reduced to $400 a month, plus hospital insurance for the child.
The case was heard on June 29, 1989. Testimony was presented by the parties, as well as Dr. Massingill's certified public accountant, Carolyn Garrett. Dr. Massingill testified that he was on the verge of taking bankruptcy in order to resolve his financial difficulties. Among other debts, he owed about $35,000 to the Internal Revenue Service which would not be liquidated by the bankruptcy proceedings. He testified that he was leaving his present practice in Rayville for several reasons. Among these reasons were the influx of physicians in his field, fewer available patients, and Medicare restraints which reduced the financial rewards of his practice. He testified that such specialities as hematology and oncology would allow him to double his present income at the completion of his additional education.
Ms. Garrett testified as to the doctor's current financial condition and impending bankruptcy proceedings. She testified that he owed an IRS debt of about $35,000 which would not be discharged in bankruptcy. Ms. Garrett testified that a monthly payback to the IRS would be established based upon Dr. Massingill's income. Such repayment would begin while he was still in the fellowship program. By Ms. Garrett's calculations, Dr. Massingill's income from his fellowship would amount to a gross monthly salary of $1,991, or a net monthly salary of $1,551.
Mrs. Massingill testified that she lived in Baton Rouge, Louisiana, where she was employed by the Louisiana State Senate. The evidence demonstrated that, with occasional overtime, she earned a gross monthly salary of $1,020 or a net monthly salary of $748. An expense sheet submitted by Mrs. Massingill further showed that she and Kayla incurred monthly expenditures of between $2,700 and $2,800. However, she testified that, with careful budgeting, they could live on about $2,000 per month.
On July 18, 1989, the trial court issued written reasons for judgment. It found that the 46-year-old Dr. Massingill had been in practice for 13 years, and had an average annual income of $130,000. It further found that the doctor had debts which exceeded his assets and that his filing for bankruptcy was imminent. The court agreed that it was not unreasonable for Dr. Massingill to want to pursue additional education to increase his income and enhance his profession. The court also agreed that it would eventually benefit both Mrs. Massingill and Kayla if Dr. Massingill received the additional education and that they should be willing to sacrifice to allow him this educational opportunity. However, *773 the trial court found that Dr. Massingill "seems to ask that his former wife and child sacrifice more financially than himself."
As to income, the trial court found that Mrs. Massingill, who was a high school graduate with some college credits, currently received a gross salary of $1,000 per month working for the Louisiana State Senate. Dr. Massingill's salary under his fellowship grant would amount to a gross monthly income of about $2,000. Thus, the parties would have approximately $3,000 per month upon which to support three persons.
The trial court further found that both parties had exaggerated or overestimated various living expenditures. The court found that Dr. Massingill would be able to enhance his monthly income by doing additional, part-time work in hospital emergency rooms. Therefore, the trial court reduced the child support and alimony payments from a total of $1,500 per month to $1,000 per month ($500 per month child support and $500 per month alimony).
A judgment in conformity with this opinion was signed on July 28, 1989.
Dr. Massingill appealed. He assigned as error the trial court's failure to further reduce his alimony and child support obligations.

CHILD SUPPORT
Dr. Massingill's monthly child support obligation was reduced by the trial court from $700 to $500. He seeks a further reduction to the amount of $400 per month.
A parent whose change of circumstances is due to his voluntary termination of employment can obtain a reduction in child support payments while engaged in further educational pursuits. The following circumstances must be shown: (1) a change of circumstances has occurred; (2) the voluntary change of circumstance is reasonable and justified; (3) the parent is in good faith and not attempting to avoid his alimentary obligations; and (4) his action will not deprive his child of continued reasonable financial support. Mosley v. Mosley, 348 So.2d 225 (La.App. 3rd Cir. 1977), writ refused, 350 So.2d 1213 (La. 1977); Daigre v. Daigre, 527 So.2d 9 (La. App. 3rd Cir.1988).
There is no dispute that Dr. Massingill was in good faith in pursuing his medical studies in hematology and oncology. His actions do not suggest that he is endeavoring to avoid his alimentary obligations. A change of circumstances, albeit a voluntary one, occurred which necessitated a modification of the doctor's monthly child support payments.
Both parents are obligated to contribute to the support of the child in proportion to the needs of the child and the circumstances of each parent. LSA-C.C. Arts. 227, 231. If finances permit, the child is entitled to the same standard of living which she enjoyed before the marriage ended. Osborne v. Osborne, 512 So.2d 645 (La.App. 2d Cir.1987).
The trial court must consider the totality of the circumstances of each case in rendering an award of child support. Pittman v. Pittman, 418 So.2d 23 (La.App. 1st Cir.1982), writ denied, 423 So.2d 1140 (La.1982).
A portion of the custodial parent's obligation of support will be fulfilled by the day-to-day care and maintenance which she gives to the child by her physical presence and efforts. This day-to-day care may include washing clothes, preparing meals, providing transportation, and maintaining the home environment. It cannot be precisely measured and constitutes a substantial contribution to the child's support. Consequently, it is not appropriate to calculate the entire amount needed for support of the child and divide it evenly between the two parents. Chaffee v. Chaffee, 398 So.2d 1169 (La.App. 2d Cir.1981); Dufrene v. Dufrene, 430 So.2d 759 (La.App. 5th Cir.1983).
In fixing the amount of child support, the trial court is vested with considerable discretion. The trial court's judgment will not be disturbed absent a showing of abuse of discretion. Pittman, supra.
*774 Mrs. Massingill's list of expenses, which was admitted at trial, included an itemization of Kayla's expenses. However, some items, such as rent and groceries, included both the mother's and the daughter's expenses. Precise mathematical calculation of their respective shares of these household expenses is impossible. From our review of the record, we conclude that Kayla's monthly expenses are in excess of $800.
We find no abuse of discretion in the trial court's award of $500 per month in child support for Kayla. This award requires Dr. Massingill to carry the financial burden of slightly more than half of Kayla's expenses. Her mother, whose salary is substantially less than that of her father, provides day-to-day care for the child as the custodial parent, a substantial contribution to her support obligation.
This assignment of error has no merit.

ALIMONY
Dr. Massingill was originally ordered to pay permanent alimony of $800 per month. On his rule to reduce, the trial court lowered the monthly payment to $500. On appeal, Dr. Massingill seeks further reduction to $100 per month.
Permanent alimony under LSA-C.C. Art. 160 is awarded to a former spouse in need and it is limited to an amount sufficient for the former spouse's maintenance. Maintenance includes food, shelter, clothing, transportation, medical and drug expenses, utilities, household maintenance, and income tax liability generated by alimony payments. Meyers v. Meyers, 344 So.2d 451 (La.App. 2d Cir.1977); Gray v. Gray, 451 So.2d 579 (La.App. 2d Cir.1984), writ denied, 457 So.2d 13 (La.1984).
As with child support, the trial court is vested with great discretion in making alimony determinations, and its judgment will not be disturbed absent a manifest abuse of discretion. Gray, supra.
Dr. Massingill contends that his former wife is an experienced businesswoman capable of earning substantially more than her present income. However, the record does not fully support this assertion. Mrs. Massingill testified that she had some college credits but no degree. During the marriage, she participated in an unsuccessful bakery business. Thereafter, she worked as a sales clerk in different stores, and briefly worked at an insurance agency in California. The record shows that she earned $1800 per month in California. However, the record does not establish the cost of living there, the exact nature of that work, or the availability of and the salary range for such work in Louisiana. Nor does the record reveal any details pertaining to her work duties in her present employment. Thus, based upon the record before us, we cannot say that Mrs. Massingill is earning substantially below her capabilities. Additionally, we note that the claimant spouse's earning capacity is only one factor to be considered in setting alimony.
Dr. Massingill makes several arguments which are as equally applicable to child support as to alimony. He contends that the trial court's ruling will force him to spend all of his free time working weekend emergency room shifts. In this regard, we observe that of the parties, Dr. Massingill is in a substantially better position to earn additional income. Both parents are obviously facing dire financial straits as a result of Dr. Massingill's unilateral decision to reenter medical school. However, working weekend emergency room shifts, although difficult, is a lucrative option not available to Mrs. Massingill. She is limited in her ability to earn additional income by her job constraints (overtime being only periodically available) and her position as custodial parent (additional work hours by definition necessitating additional child care expenses). Under the circumstances of this case, we find no error in the trial court's consideration of the availability of additional part-time employment for Dr. Massingill. See Woodall v. Woodall, 397 So.2d 524 (La.App. 2d Cir.1981).
The doctor also contends that the trial court failed to consider all of his other debts and expenses. In this vein, we note that a spouse's alimentary obligation is a *775 very high priority. One who owes alimony is required, if necessary, to reduce his expenses and make adjustments with his creditors in order to meet his alimentary obligations. Galbraith v. Galbraith, 382 So.2d 1042 (La.App. 2d Cir.1980); Shelton v. Shelton, 395 So.2d 899 (La.App. 2d Cir. 1981); Hamiter v. Hamiter, 419 So.2d 517 (La.App. 2d Cir.1982). The record even indicates that the IRS' payback procedure would allow a monthly payment based on the doctor's salary.
We find that the trial court adequately considered the factors which are to be assessed in setting alimony and which are enumerated in Art. 160. As previously noted, the parties are both experiencing financial difficulties because of Dr. Massingill's pursuit of additional medical education. Circumstances (which include the doctor's bankruptcy) now require that Mrs. Massingill pay for her own car and auto insurance, a substantial monthly expenditure. After examination of the parties' expenditures and consideration of their respective financial situations, we find no abuse of the trial court's discretion in fixing monthly alimony at $500.
This assignment of error has no merit.

CONCLUSION
The judgment of the trial court is affirmed, at appellant's cost.
AFFIRMED.