643 So.2d 216 (1994)
Susan Gail HESTER
v.
William Ewing HESTER, III.
No. 93-CA-1665.
Court of Appeal of Louisiana, Fourth Circuit.
September 15, 1994.
*217 Robert C. Lowe, Ellen Widen Kessler, Lowe, Stein, Hoffman, Allweis & Hauver, New Orleans, for plaintiff-appellee.
Nancy J. Marshall, Deutsch, Kerrigan & Stiles, New Orleans, for defendant-appellant.
Before KLEES, LOBRANO, ARMSTRONG, PLOTKIN and WALTZER, JJ.
KLEES, Judge.
Defendant William Ewing Hester appeals a trial court judgment awarding permanent alimony to plaintiff Susan Gail Hester. We amend the judgment and affirm as amended.

1. Facts

Mr. and Mrs. Hester were married in Jackson, Mississippi, in October of 1969. After Mr. Hester was discharged from military service, he became a lawyer and Mrs. Hester obtained a masters of education degree. The couple moved to New Orleans, where Mr. Hester joined a prominent law firm and Mrs. Hester taught school. The couple had three children during the next thirteen years of their marriage.
The Hesters were separated in August of 1988 when Mr. Hester left the matrimonial domicile. At the time of the trial for permanent alimony, Mrs. Hester was 45 years old and held a masters degree in education. Mrs. Hester was residing in the matrimonial domicile with the couple's three children Amanda, 15, who is autistic and suffers from both Tourette's syndrome and from an obsessive-compulsive disorder; Sara, 12, who is dyslexic; and William, 8½, who is also dyslexic. Mrs. Hester was employed at Trinity Episcopal School, where both Sara and William are enrolled in classes.
Mrs. Hester filed a petition for legal separation in November of 1988. Following a trial on the merits, the trial court granted the petition for separation, finding Mrs. Hester free from fault and awarding her alimony pendente lite of $750 per month plus 25 percent of a yearly bonus Mr. Hester receives as a member of the law firm. Additionally, the court awarded Mrs. Hester child support of $1,650 per month plus 30 percent of Mr. Hester's yearly bonus. That judgment was affirmed by this court. Hester v. Hester, No. 90-CA-0930 (La.App. 4th Cir., January 16, 1992), 592 So.2d 13 (Plotkin, J., dissenting in part). The Louisiana Supreme Court denied writs.
*218 Mr. Hester then filed a rule to set permanent alimony. A final divorce was granted by the trial court on May 21, 1992. At that time, the trial court maintained the original child support decree and set permanent alimony at $2,100 a month plus 20 percent of Mr. Hester's yearly bonus, a substantial increase from the alimony pendente lite award of $750 per month plus 25 percent of the yearly bonus. Mr. Hester appeals, making two arguments: (1) that Mrs. Hester has sufficient means for her own support and thus is not entitled to any permanent alimony, and (2) alternatively, that the permanent alimony award is excessive.

2. Entitlement to permanent alimony

La.C.C. art. 112(A)(2) sets out the following factors, which must be considered by trial courts in setting permanent alimony awards:
(a) The income, means, and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses, including their earning capacity;
(d) The effect of custody of children of the marriage upon the spouse's earning capacity;
(e) The time necessary for the recipient to acquire appropriate education, training, or employment;
(f) The health and age of the parties and their obligation to support or care for dependent children; and
(g) Any other circumstances that the court deems relevant.
A party seeking alimony is under a burden to show either that he or she is in necessitous circumstances or that he or she has insufficient means for support. Musselman v. Musselman, 524 So.2d 90, 92 (La. App. 4th Cir.1988). An alimony award set by a trial court may not be reversed except on a finding of abuse of discretion. Hogan v. Hogan, 549 So.2d 267, 271 (La.1989).
On appeal, Mr. Hester argues that Mrs. Hester should be precluded from receiving permanent alimony because she has "sufficient means for support," implying that Mrs. Hester failed to carry her burden of proof.
The record shows that Mrs. Hester is 45 years old, that she has a master's degree in education, and that she teaches at Trinity Episcopal School, where her yearly salary is $22,500. Further, Mrs. Hester presented a monthly expense sheet indicating that her expenses total almost $2300 per month. Consideration of her expenses in light of her salary therefore reveals that Mrs. Hester did establish a prima facie case of entitlement to permanent alimony.
Mr. Hester claims, however, that Mrs. Hester has the ability to earn a higher salary, but that she has not made "any attempt to find a higher-paying position at another school." Nor has she made any attempt to secure a second job, Mr. Hester claims. Mrs. Hester counters by asserting that her decision to remain at Trinity is based on the fact that two of her children, both of whom have serious learning problems, are enrolled at Trinity. Further, she claims that she is unable to obtain a second job because of the challenging demands of her obligations as custodial parent of the couple's three children. On this issue, she points especially to the fact that the couple's oldest child, Amanda, who is 15, has autistic symptoms, as well as an obsessive/compulsive disorder, which frequently requires that she be restrained to prevent her from physically harming her younger brother and sister.
In Massengill v. Massengill, 564 So.2d 770 (La.App. 2d Cir.1990), the appellate court affirmed a trial court permanent alimony award which required the payor husband to work weekends in order to meet his alimony obligation, despite his complaints that the same demands were not placed on his wife. The appellate court found that the payee wife should not be required to work overtime because of her "position as custodial parent." Id. at 774.
Under the circumstances presented by this case, we find no abuse of the trial court's discretion in awarding Mrs. Hester permanent alimony. Thus, Mr. Hester's first argument on appeal has no merit.

3. Excessiveness of the award

The trial court awarded Mrs. Hester $2,100 a month plus 20 percent of Mr. Hester's *219 yearly bonus, apparently based on the trial court's acceptance of all of Mrs. Hester's figures concerning her needs listed on the expense sheet. Mr. Hester's arguments for modification of this award are based primarily on the fact that the award greatly exceeds the alimony pendente lite award of $750 per month plus 25 percent of the yearly bonus.
Initially, we note that a permanent alimony award is not controlled by, and may exceed, a former award of alimony pendente lite if the circumstances require a higher award. The guidelines for determining permanent alimony are different from those for determining alimony pendente lite; the initial setting of a permanent alimony award following a divorce decree is a new award, requiring a new evaluation. Guillory v. Guillory, 626 So.2d 826, 831 (La.App. 2d Cir.1993). The difference between the two types of awards has been explained by the Louisiana Supreme Court as follows:
Alimony after divorce is quite different from alimony pendente lite. Under Louisiana Civil Code Article 160, alimony after divorce is in the nature of a pension, obtainable by the former wife only when she has not been at fault and when she has not sufficient means for her support. This alimony after divorce is not awarded in an amount sufficient to support the former wife in the manner in which she is accustomed to live; rather, it is awarded in an amount sufficient to provide for her maintenance, which includes food, clothing, shelter, and other basic necessities; and the wife has the burden of establishing her necessitous circumstances.
Ward v. Ward, 339 So.2d 839 (La.1976). Although the award of permanent alimony is now controlled by La.C.C. art. 112 rather than La.C.C. art. 160 and the Ward case has been legislatively overruled in part by La. C.C. art. 112(A)(3) which allows consideration of a claimant spouse's earning capacity in determining the amount of alimony, the principles enunciated by the above quotation still apply. The amount of alimony pendente lite has no bearing on the amount of permanent alimony.
Moreover, the awards in this case are not as disparate as they seem at first glance. The alimony pendente lite award also required that Mr. Hester directly pay some of Mrs. Hester's other expenses, including auto insurance, medical expenses, auto repair and maintenance, gasoline, and life insurance premiums, in addition to the $750 per month.

a. Monthly award

The above discussion notwithstanding, we find that the trial court did abuse its discretion in setting the permanent alimony award at $2,100 per month. As noted previously, that award was apparently based on the trial court's finding that all of the figures listed on Mrs. Hester's expense sheet were "necessary" expenses. Our consideration of that list of expenses reveals however that the trial court obviously included non-necessitous expenses in setting the award.
Mrs. Hester's list of expenses included many types of expenses which this court has previously determined should not be considered in setting permanent alimony. Permanent alimony may cover such expenses as food, clothing, shelter, reasonable and necessary expenses for transportation, medical care, drugs, utilities, household maintenance, and income tax liability arising from the alimony payments. Guillory v. Guillory, 626 So.2d 826, 832 (La.App. 2d Cir.1993). However, this court has previously held that permanent alimony should not cover such expenses as newspapers, gifts, recreation, vacations, and church tithes. Shenk v. Shenk, 563 So.2d 1000, 1004 (La.App. 4th Cir.1990); Volker v. Volker, 398 So.2d 134 (La.App. 3d Cir.1981).
In the instant case, Mrs. Hester listed the following non-necessitous expenses which fall under the categories disallowed by the established jurisprudence in this circuit: clubs, $10; newspapers, $13; entertainment, $35; gifts, $20; church and charities, $13; Cox Cable, $10, and pool expenses, $10. Thus, we find that the trial judge abused his discretion by considering the $111 worth of monthly expenses listed above.
Further, Mrs. Hester's expense list included $385 for psychological counseling. Although this court has previously allowed an alimony award to cover expenses for necessary *220 psychological counseling, proof of the necessity of such treatment, in the form of testimony from a treating physician, is required. Gottsegen v. Gottsegen, 503 So.2d 588, 590 (La.App. 4th Cir.1987), writ denied 503 So.2d 1019 (La.1987). The record in the instant case contains no proof that Mrs. Hester requires psychological counseling other than her simple statement that her counseling cost $385 per month. Thus, we find that Mrs. Hester failed to carry her burden of proving entitlement to alimony to cover expenses for psychological counseling.
Since the $2,100 monthly alimony award in this case included awards for nonnecessitous expense and for psychological counseling which Mrs. Hester failed to prove were necessary, we find that the trial court was manifestly erroneous in setting the award. The proper amount of the alimony award is the total amount of necessary expenses proven by Mrs. Hester. Since Mr. Hester did not attempt to contradict the amount of any of the expenses listed by Mrs. Hester on her expense sheet other than those discussed above, we find that the award should cover the total of all the necessary expense she proved. The simplest way to calculate that amount is to subtract the amount of the expenses listed which we have disallowed $496from the total amount of expenses claimed on Mrs. Hester's expense sheet $2,298for a total of $1,802. Thus, the trial court judgment is amended to set Mrs. Hester's permanent monthly alimony award at $1,802.

b. Percentage of bonus

We find no abuse of discretion in the trial court's award to Mrs. Hester of twenty percent of Mr. Hester's annual bonus. Mr. Hester claims that this award was improper because his bonus is not guaranteed and is not a part of his monthly salary. These same arguments were advanced in Zatzkis v. Zaztkis, 632 So.2d 307 (La.App. 4th Cir. 1993), in which we held that the trial court properly considered Mr. Zatzkis' bonus as a part of his income. In that case, we found no abuse of discretion in the trial court's award to Mrs. Zatzkis of permanent alimony in a specified amount per month plus ten percent of Mr. Zatzkis' net bonus. Id. at 319.
In light of this precedent, we conclude that the trial court did not abuse its discretion by including in the award to Mrs. Hester a percentage of Mr. Hester's bonus.

Conclusion
Accordingly, the trial court judgment is amended to reduce the permanent alimony award from $2,100 per month to $1,802 per month. In all other respects, the award is affirmed.
AMENDED; AS AMENDED, AFFIRMED.
ARMSTRONG, J., concurs in part and dissents in part.
PLOTKIN and WALTZER, JJ., concur in part and dissent in part with reasons.
ARMSTRONG, Judge, concurring in part and dissenting in part:
I agree with the majority that the trial court correctly determined that Mrs. Hester is entitled to permanent alimony, including twenty percent of Mr. Hester's annual bonus.
However, I would also affirm the judgment of the trial court insofar as it determined that Mrs. Hester was entitled to $111.00 per month for what the majority refers to as nonnecessitous expenses. In Zatkis v. Zatkis, 632 So.2d 307 (La.App. 4th Cir.1993), cited by the majority for another proposition, this court affirmed an award of permanent alimony covering such expenses as "dues" for a community center, or club, and "gifts," two expenses the majority claims are disallowed as non-necessitous by established jurisprudence in this circuit. Id. at 318, 319. A trial court is vested with much discretion in setting alimony and its determinations are entitled to great weight on review. Rovira v. Mire, 587 So.2d 149 (La.App. 4th Cir.1991). Because one person's non-necessitous expense might be another person's necessary expense, I am unable to say the trial court abused its discretion by including $111.00 for these expenses in the award for permanent alimony.
Finally, considering the uncontradicted testimony by Mrs. Hester that she is receiving *221 psychological counseling, I would remand this case to the trial court to allow her to present proof of medical expenses incurred for such counseling.
PLOTKIN, Judge, concurring in part and dissenting in part with written reasons:
I believe that the trial court abused its discretion in awarding 20 percent of Mr. Hester's annual bonus from his law firm to Ms. Hester for permanent alimony. Since the $1802 monthly alimony award is sufficient to meet all of Mrs. Hester's needs as listed on her own expense sheet, the award of a portion of Mr. Hester's yearly bonus can only be construed as a "bonus" alimony award, not justified by any of the evidence presented at trial.
The award set by the court in this case is permanent alimony, which is controlled by determination of the payee spouse's necessary expenses. As explained in the majority opinion on the amount of permanent alimony, the standard for awarding this type of alimony should be clearly separated from the standard for awarding alimony pendente lite, which is based on the standard of living to which the payee spouse has become accustomed, since the parties are still married during the time covered by the alimony pendente lite award.
However, in the instant case, the trial judge's award, which includes a percentage of Mr. Hester's annual bonus from his law firm, seems to be designed at least partially to continue Mr. Hester's marital obligations to his ex-wife, which were absolutely extinguished at the time of the divorce. Moreover, Ms. Hester has been awarded each and every expense which she claimed on her expense sheet which can reasonably be interpreted as a necessity as a part of the $1,802 monthly award. Mr. Hester cannot properly be required to give Mrs. Hester a "bonus" amount of alimony which she would then be allowed to spend on nonnecessities; such an award is not allowed by the codal articles or by the jurisprudence, under the circumstances presented by this case.
The majority's decision to affirm the award of 20 percent of Mr. Hester's annual bonus as part of the permanent alimony award is based on the belief that such an result is mandated by this court's recent opinion in Zatzkis v. Zatzkis, 632 So.2d 307 (La.App. 4th Cir.1993). Although I would find that the Zatzkis case provides authority for including a percentage of a spouse's annual bonus in a permanent alimony award under some circumstances, I disagree with the majority's implied conclusion that it requires this court to affirm every permanent alimony award which includes a percentage of one spouse's annual bonus. I would not follow the Zatzkis decision under the circumstances presented by this case for several reasons.
First, a close reading of the Zatzkis decision reveals that the affirmation of the award of a percentage of Mr. Zatzkis' annual bonus as a part of Ms. Zatzkis' permanent alimony was not properly analyzed. The Zatzkis decision, which is lengthy, contains only one paragraph concerning the inclusion of a percentage of the bonus in the permanent alimony award. That paragraph reads as follows:
[Mr. Zatzkis] asserts that the trial court should not have considered his annual bonus because he did not have access to his bonus on a monthly basis and his bonus was not guaranteed. The child support guidelines are based on gross income figures.... The trial court properly considered Ralph's bonus as part of his income. In addition to the $1,000 monthly award, the trial court designated the permanent alimony to be paid partially based on ten percent of the year-end-bonus to reflect any fluctuation in the amount of Ralph's bonus.

The above quote reveals that the affirmation of this portion of the permanent alimony award is actually based on the finding that the trial court properly considered the bonus in calculating Mr. Zatzkis' gross income for child support purposes. The standard for setting permanent alimony and child support awards are distinctly different; the Zatzkis decision improperly blurs the line between the two types of support awards.
Second, the facts of the Zatzkis opinion are different from the facts presented by the instant case. Nothing in the Zatzkis opinion indicates that the monthly permanent alimony *222 award set by the court is sufficient to meet all Ms. Zatzkis' necessary expenses. Since the opinion is unclear concerning Ms. Zatzkis' expenses, we should not assume that the Zatzkis decision is authority for giving a spouse a "bonus" amount of alimony over and above his or her necessary expenses. In the instant case, Ms. Hester receives a sufficient amount of monthly alimony to meet each and every necessary expense she listed on her expense sheet; thus, she simply is not entitled to a percentage of her ex-husband's bonus under the applicable codal provisions and the jurisprudence.
I also disagree with Ms. Hester's claims in oral argument to this court that the trial judge's decision to award her 20 percent of her ex-husband's yearly bonus should be affirmed because it is based on an attempt to do "equity" in a situation where one of the spouses has assumed the total responsibility for caring for children of the marriage. Ms. Hester is entitled to a percentage of Mr. Hester's bonus, she claims, because Ms. Hester's life is completely dominated by her obligations to Mr. Hester's children. Ms. Hester also claims that the award makes up for deficiencies in the child support award set by the trial court.
First, I would note that the proper way to balance deficiencies in a child support award is for Ms. Hester to file a rule for an increase in child support or for the trial court to set the child support award at an amount sufficient to meet all the children's needs. Further, even assuming that Ms. Hester's contentions are correct, which is not clear from the record in this case, this court should not allow the trial court to blur the established lines between child support and permanent alimony. Obviously, the two types of support awards should be clearly delineated since the standards for awarding the two are completely different. Further, the record in this case reveals that the trial court's child support award is more than adequate to meet the children's expenses as revealed by Mrs. Hester's own list. I find no merit in the argument that the award of 20 percent of Mr. Hester's yearly bonus should stand as an attempt at equity. Equity should be called into play only when the established law is inadequate to provide for the situation faced by the court; in this case, the law is clear permanent alimony may be awarded only to cover necessary expenses of the claimant spouse.
I concur in the portion of the majority opinion affirming the award of permanent alimony and in the portion affirming the award to omit the non-necessitious expenses.
WALTZER, Judge, concurring in part and dissenting in part with reasons.
We agree with the majority opinion insofar as it affirms the trial court's ruling that Mrs. Hester met her burden of proving her entitlement to permanent alimony, and that the trial judge did not abuse his discretion in awarding to Mrs. Hester twenty percent of Mr. Hester's annual bonus.
We disagree, however, with the majority's holding that the trial court abused its discretion in awarding Mrs. Hester $111 per month for incidental expenses and $385 for psychological counselling.
Our disagreement with the holding is not merely a dispute concerning proper quantum. Significantly, the majority opinion misapprehends mandatory codal provisions governing permanent alimony.
We disagree with the majority's disallowance of the following monthly expenses:

$10. Cox Cable (basic cable service)
 10. pool service
 10. clubs
 13. newspaper
 13. charities/churches
 20. gifts
 35. entertainment
385. counseling
________________
$496.00 TOTAL

We are guided by LSA-C.C. art. 112, which provides that in determining the entitlement and amount of alimony after divorce, the court shall consider:
"(a) The income, means and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses, including their earning capacity;

*223 (d) The effect of custody of children of the marriage upon the spouse's earning capacity; ...
(f) The health and age of the parties and their obligations to support or care for dependent children; and
(g) Any other circumstances that the court deems relevant." (Emphasis added.)
LSA-C.C. art. 112 is found in Chapter 2 of Title V, in Section 1 entitled "Alimony." Thus, its provisions are separate and distinct from those contained in the same chapter's Section 4 entitled "Child Support." The spouse's right to an enhancement (or reduction) of alimony under LSA-C.C. art. 112(A)(2)(d), (f) and (g), thus is independent of provisions made for child support, and the sums designated as child support payments are independent of sums due to satisfy a party's alimony obligation. The codal provision acknowledges that the alimony obligation itself, separate and apart from the child support obligation, may be affected by the custody of children, and the extent of the claimant's obligations to support and care for the dependent children.
Applying this legal principle to the case at bar, the additional obligations imposed upon Mrs. Hester by reason of her position as sole care-giver of the three Hester children provide a basis, under LSA-C.C. art. 112(A)(2)(d), (f) and (g) for the trial judge's action in setting alimony as provided for in the judgment below. The clear legislative intent of LSA-C.C. art. 112 is to provide for this compensation by way of permanent alimony, mandating the trial judge when he considers his award of permanent alimony, to consider the effect of custody of the children of the marriage. This is of particular consequence in the instant case, where the children's disabilities create particularly significant "effects" on the life of the custodial parent.
The majority fails to take into account the fact that this Court has held that the lifestyle of the parties during the marriage is also relevant in determining what is "necessary" for support of the party requesting alimony. Gottsegen v. Gottsegen, 503 So.2d 588 (La. App. 4th Cir.1987); Taylor v. Taylor, 473 So.2d 867 (La.App. 4th Cir.1985), writ denied 477 So.2d 1126 (La.1985). Trial courts must consider each divorced couple against the background of their common life together in determining what is necessary for the party receiving alimony. Thus, what may be a "necessity" in this case may not be such in all cases.

FACTUAL SETTING
In order properly to review the judgment below for abuse of discretion, it is necessary to revisit the factual background of this case. Such a review reveals that this is the story of five lives, those of the husband and wife, married in Jackson, Mississippi, twenty-four years ago,[1] and of the their children. Mrs. Hester testified that three children were born of her marriage to Mr. Hester: Amanda, a seriously disabled, autistic teen-aged daughter, who suffers as well from Tourette's Syndrome and obsessive-compulsive disorder; and eight-year-old William IV and twelve-year-old Sarah, who are learning disabled, suffering symptoms of dyslexia. It is a case in which the husband had the support of his wife in his early military career, in his legal training and in his move to New Orleans, where he became a member of a distinguished labor law firm. She received a master's degree and found a teaching position in an exemplary independent school where the couple's two learning disabled children were accepted, nurtured and able to thrive. The couple's lifestyle was described by the trier of fact as "luxurious."
Like Mrs. Gottsegen:
"the effort of [the wife] during the years in which her former husband received his [in our case legal] ... education and established his practice have contributed directly to [the husband's] income and earning capacity and to the lifestyle the parties *224 enjoyed during their marriage." Gottsegen, supra at 589.
That lifestyle is, therefore, under our legal standard, a relevant consideration in setting permanent alimony. Gottsegen, supra.
Shortly before their nineteenth wedding anniversary, Mr. Hester unjustifiably abandoned the marital domicile, and Mrs. Hester sued for legal separation three months later. Hester v. Hester, No. 90-CA-0930 (La.App. 4th Cir.1992), 592 So.2d 13. The trial court found in favor of Mrs. Hester in all respects, granting a legal separation on the grounds of cruel treatment by Mr. Hester, finding her free from fault in the dissolution of the marriage, finding Mr. Hester to be at fault, and awarding her custody of the three children of the marriage, alimony pendente lite and child support. Id. The trial court also found that Mrs. Hester's signature on a marriage contract which abrogated the community property regime, relied upon by Mr. Hester, was obtained through his fraudulent misrepresentations and suppression of truth, and the marriage contract was rescinded. Id. In its reasons for judgment, which are part of the record on this appeal, the trial court found Mr. Hester's cruel treatment of Mrs. Hester to have consisted of telling her she was physically unattractive, engaging in adulterous affairs "too numerous to mention," according to the trial court's reasons for judgment, and defined as "scores" of women by Mr. Hester himself, refusing to take his wife with him on many trips, generally excluding her from his life, exhibiting a pattern of indifference to her emotional needs throughout their marriage and refusing to have sex with her in the years immediately preceding their physical separation, in addition to having practiced fraud upon her. The trial court specifically found "Susan Gail Hester to be an extremely credible witness and thus believe[d] her version of the events."
By amended judgment, the trial court ordered Mr. Hester to pay $1650 monthly child support retroactive to 26 April 1989 and alimony pendente lite of $750 per month plus 30% of his after-tax law firm bonus as child support and 25% of the after-tax bonus as additional alimony pendente lite retroactive to 26 April 1989. In addition, Mr. Hester was ordered to pay the mortgage on the family home, insurance on family cars, church and school pledges (with an indication that the donations are from BOTH Mr. and Mrs. Hester), tuition and tutoring expenses for the severely disabled daughter, counseling for Mrs. Hester and the two Hester daughters, repair, maintenance and gas for the family cars, after school care and summer camp for the children, insurance premiums, major medical and hospitalization insurance for the family members.
Mr. Hester appealed this judgment, and this Court affirmed. Id. The Louisiana Supreme Court denied Mr. Hester's application for writ of certiorari or review in Hester v. Hester, No. 92-C-0443, on 26 March 1992, 594 So.2d 1324.
It appears that Mr. Hester, from his advantaged position as an affluent attorney, continues to use the judicial process to wage a war of attrition against his own family and his former wife.[2]
*225 The trial court rendered judgment on Mr. Hester's motion to set permanent alimony following divorce, granting Mrs. Hester $2100 per month plus 20% of his annual bonus, after taxes. The percentage formula protects Mr. Hester, should his bonus fall below the expected average level. Mrs. Hester is protected by her right to return to court should the bonus fail to meet the obligations of her household.
Mr. Hester's motion for a new trial was denied, and this appeal was taken.
In determining under LSA-C.C. art. 112 the "effect of the custody" of the Hester children, the trial judge had before him a record replete with justification for his ultimate award, and a record which amply supports his great discretion in fashioning that award.
At trial, the transcript of which is a part of the record on appeal herein, Mr. Hester admitted that although in one six-month period, he had travelled to Hilton Head, S.C., the U.S. Open Tennis Championship in New York, LaJolla, CA for a softball championship, San Diego, CA, Puerto Rico, the Virgin Islands, the French Open Tennis Tournament in Paris, and tennis tournaments in Baton Rouge, Atlanta, Jackson and Louisville, he attended only "one, maybe two" of the activities in which his three children participated during the four years since he abandoned the family domicile. Despite Mr. Hester's interest in sport, which he has apparently indulged lavishly, he has never seen his son play baseball or soccer. Mr. Hester also admitted that while he entertained at a birthday party at the Country Club in honor of a female companion, he had in that three and a half year separation attended only one birthday party for any of his own children.
Mr. Hester also admitted that although his payment of approximately $5,000 to the couple's church was, by Court order, to have been made in both their names as a payment from the community, he made this gift and thus maintained the church membership in his own name only.
This background was before the trier of fact and, we believe, is important in considering what is required in order that Mrs. Hester may make up for this emotional and physical abandonment of these three young children by their father. See, LSA-C.C. art. 112(A)(2)(d) and (f). The uncontradicted evidence adduced at trial shows Mrs. Hester to be, in fact, the only parent providing daily or even regular nurture to the children.

PARTICULAR EFFECTS OF THE CUSTODY OF AMANDA HESTER
According to Mrs. Hester's unchallenged testimony at trial, the severely disabled, autistic elder daughter, Amanda, is able to be mainstreamed into a local parochial school, but requires constant vigilance at home and on occasion physical restraint in order that she not harm herself or her siblings. Mrs. Hester, whom both trial court judges found to be a credible witness, testified that this child has no friends except Mrs. Hester herself; does not relate to her own peer group, and depends heavily on Mrs. Hester for emotional support. Mrs. Hester described "intense times" between this girl and her siblings that create the need for supervision, intervention and even physical restraint. Mrs. Hester must then work with the 8-year old son, William IV, and 12 year old daughter, Sarah, to help them in dealing with their feelings of anger and resentment. Mrs. Hester is required constantly to deal with Amanda's teachers and tutors, including conferences concerning the child's special needs *226 and academic support requirements. Mrs. Hester takes the child to tutoring every week and to a social worker every week. Amanda has pervasive learning disability in language and social situations, and her Tourette's Syndrome causes inappropriate laughing, yelling, screaming, eye-crossing and hand tics. The child would experience stress if Mrs. Hester were to leave the children on school nights, so Mrs. Hester is unable to leave the home on week nights. Mrs. Hester shared the child's diagnosis with Mr. Hester in 1989, but he has not provided any assistance in the management of Amanda's disabilities, and even denied knowledge of the child's condition at trial. Mrs. Hester must also monitor the child's daily prescription doses of Anafranil to treat the obsessive-compulsive disorder.

PARTICULAR EFFECTS OF THE CUSTODY OF SARAH HESTER
The uncontroverted testimony is that Sarah needs assistance from Mrs. Hester in reading because of the girl's dyslexia. Although Sarah is improving, Mrs. Hester must still read to her and help her with her studies on a daily basis.

PARTICULAR EFFECTS OF THE CUSTODY OF WILLIAM HESTER, IV
Mrs. Hester testified further, without contradiction, that William IV demonstrates similar symptoms of dyslexia, but is too young for a firm diagnosis to be made. She testified again without contradiction concerning her daily obligations to this child. Every school night, Mrs. Hester reads to her son for 30 minutes, and he reads to her. She goes over his homework to insure that his substandard reading skills will not affect adversely his understanding of other subjects.

EFFECTS OF CUSTODY GENERALLY APPLICABLE TO THE THREE CHILDREN
Mrs. Hester's uncontroverted testimony established that the two younger children play baseball, and William IV is involved in soccer and basketball. Mrs. Hester provides all transportation to practices and games. In the three and a half years of separation, Mr. Hester took his children to baseball practice one or two times. Sarah, the 12 year old, takes piano; Sarah and Amanda take drama lessons; William and Sarah have taken art lessons. Mrs. Hester handles all these arrangements.
This constant care is provided by Mrs. Hester herself, who can also offer the intangible love, affection and concern that a paid nurse cannot and Mr. Hester will not. Mrs. Hester also provides all incidental transportation to the three children, tutoring assistance to the younger dyslexic children, and must provide a presence at all their activities that would in a happier context be provided mutually by two caring parents. The trial court properly considered the impact of these duties on Mrs. Hester in setting permanent alimony, as was its mandate. LSA-C.C. art. 112(A)(2)(d) and (f).

THE TRIAL JUDGE DID NOT ABUSE HIS DISCRETION IN REJECTING MR. HESTER'S CLAIM THAT HE IS IN NECESSITOUS CIRCUMSTANCES
We agree with the trial court's rejection of Mr. Hester's claims that he is in dire financial straits because of a $32,000 note securing his down payment and renovation expenses in connection with his purchase of a lakefront condominium. We note initially that he testified that he incurred this debt AFTER the court's imposition of his child support and alimony obligations and thus both he and his banker were aware of those obligations when the loan was made. We are likewise unimpressed with his claim as stated on his expense sheet that he "only" received some $8,609.98 per month in salary. On cross-examination, it developed that his actual monthly income was approximately $10,757.50 after taxes.[3]
*227 The record shows that he has given thousands of dollars to his Church, in his own name, and $1000 annually to his alma mater, the University of Mississippi Law School. Yet, he asks this Court to decree that the trial court's award to Mrs. Hester of $13 per month for church and charitable contributions is an abuse of discretion. Mr. Hester is not economically deprived, and can well afford to compensate his former wife for the efforts she makes on a daily basis to provide a decent quality of life for his physically disabled children whom he has deprived voluntarily of a father's nurture.

STANDARD OF REVIEW
The trial court is vested with much discretion in fixing the amount of alimony and such decisions are entitled to great weight. Shenk v. Shenk, 563 So.2d 1000, 1004 (La. App. 4th Cir.1990); Anderson v. Anderson, 441 So.2d 413 (La.App. 4th Cir.1983).
The validity of the majority opinion, finding an abuse of that "much discretion" must stand or fall based on the applicability of the cases cited therein. Our review of the cases relied upon by the majority and the record below finds the cases cited do not support the majority's result.

THE MAJORITY'S DISALLOWANCE OF $111 IN INCIDENTAL EXPENSES IS CONTRARY TO APPLICABLE LAW
In this circuit, the Gottsegen rule requires the trier of fact to consider the lifestyle of the family prior to separation in determining what is a "necessity" within the context of alimony. In this case, the trier of fact found the Hesters' lifestyle to have been "luxurious."
The majority concludes that the trial judge abused his discretion in determining that the allowance of $111 for newspapers, church and charities, basic cable television, clubs, entertainment and maintenance of the family's swimming pool, is consistent with such a "luxurious" standard. We believe the majority opinion's conclusion is patently erroneous. The majority cites in support of this disallowance Shenk, supra[4]. We believe that reliance is misplaced. Most significantly, the Shenks had no children. See, LSA-C.C. art. 112(A)(2)(d) and (f). Since Mrs. Shenk did not have custody of children of the marriage, the trial court had no reason under LSA-C.C. 112 to increase her permanent alimony to reflect the effect of such custody. Mrs. Hester's life, unlike that of Mrs. Shenk, is consumed in dedicated service to her disabled children and in providing for a part of the family's support by teaching at the school that has accepted two of the children. Mrs. Shenk had been awarded $800 a month for newspapers, magazines, gifts, books, church dues, entertainment, travel and pet expenses, which this Court found excessive. Mrs. Shenk had been awarded nearly eight times the amount granted by the trial court to Mrs. Hester for incidental expenses.
Moreover, the Shenk opinion did not disallow expenses as claimed by Mrs. Hester and accepted by the trial court for basic cable television, clubs or swimming pool maintenance, and thus is not authority, as claimed *228 in the majority opinion, for disallowance of those expenses, which total $30 per month.
Under the totality of the circumstances, we do not find that the trial court's award of $111 a month for newspapers, necessary pool service, gifts, charities, basic cable television service and modest ($35.00) entertainment constitutes an abuse of the trial court's discretion. These items are reasonable in light of the family's standard of living before the separation and divorce, and are minimal when compared to Mr. Hester's substantial income and jet-set lifestyle. We find it oppressive that he would deny his wife of many years these modest expense items.

THE MAJORITY'S AMENDMENT OF THE AWARD TO ELIMINATE COUNSELING EXPENSES IS CONTRARY TO BOTH PROCEDURAL AND SUBSTANTIVE LAW
The trial court awarded Mrs. Hester counseling expense for her own account. This expense was listed on Exhibit J (GH-17 in the trial court) and Mr. Hester had the opportunity to cross-examine her about it. This was a continuing expense and one that is certainly reasonable when examining the totality of circumstances before the trier of fact, and we would not consider its award to be an abuse of the trial court's "much discretion".
The majority disallows the expense, relying on our opinion in Gottsegen, supra at 589-590. Simply put, Gottsegen does not support the majority's action. The expense awarded in that case, and affirmed on appeal, was not merely psychological counseling of the type sought by Mrs. Hester, but medical treatment by a psychiatrist. Dr. Gottsegen sought, unsuccessfully, to preclude the continuation of his wife's medical treatment by psychiatrist, Dr. Olinde, arguing that psychiatric treatment is not "basic" medical treatment within the understanding of Thiel v. Thiel, 388 So.2d 1170 (La.App. 4th Cir.1980). The Gottsegen opinion allowed payment of the psychiatric expenses, finding that Mrs. Gottsegen proved they were necessary. We find neither Gottsegen nor Thiel requires this Court to find that the trial court abused its discretion in awarding Mrs. Hester $385 monthly for counseling. Gottsegen does not require any specific form of proof, and neither does it require proof in the form of direct medical testimony as the majority opinion suggests. This Court held that in order to be awarded alimony to cover the cost of psychiatric treatment, the party must prove only that it is necessary. Gottsegen, supra at 589-590. The opinion does not require any specific type of proof of that fact. We find the record below to be replete with support, NOT ONLY from Mrs. Hester's testimony, but also from Mr. Hester's admissions at the trial, for Mrs. Hester's need for an adult counselor to help her with the burdens imposed on her by her husband's past and continuing conduct and her position as the solitary emotional and physical support for her disabled school-aged children.
Further, neither case is authority for this reviewing court to AMEND the judgment and exclude that element of the award. Gottsegen allowed the psychiatric treatment expense, and in Thiel, this Court merely remanded the case to the trial court in order that the claimant could put on evidence of the need for psychiatric care, her medical condition, and the cost of treatment. We submit that if the overwhelming weight of evidence below is somehow deemed insufficient to show a need for counseling, the matter should be remanded to the trial court for further proceedings on this issue, under the authority of the very line of cases cited by the majority opinion. There is no authority in those cases, in the statutes or in the Civil Code for the majority's action in summarily excluding counseling expenses from the award.

CONCLUSION
Mrs. Hester offered credible proof of expenses of $2,298 per month, after taxes. The trial court awarded $2,100 per month plus 20% of Mr. Hester's annual bonus. The award was made subject to income tax. This is surely no "windfall" and the $68.66 to $214.66 monthly payment in excess of the out-of-pocket expenses proved at trial is insufficient to cover the income tax liability on the payments and clearly would not compensate an employee were one to be found to undertake Mrs. Hester's extraordinary duties as shown on the record. The trial *229 court acted pursuant to the mandate of LSA-C.C. art. 112, and considered in the fixing of Mrs. Hester's permanent alimony, the effects of the custody of the couple's three children. We find no abuse of the trial court's discretion in its award of $496 per month in expenses disallowed by the majority, and would affirm the entire award made by the trial court.
NOTES
[1] See, unpublished opinion of this Court, Hester v. Hester, No. 90-CA-0930 (La.App. 4th Cir. 16 January 1992), 592 So.2d 13. Although unpublished, this opinion is properly cited in this continuing and related litigation. Roberts v. Sewerage and Water Board of New Orleans, 634 So.2d 341 (La.1994). Certain pleadings and judgments rendered in the trial court prior to the 1992 opinion of this Court are a part of the record and are referred to in this dissent.
[2] The record below demonstrates a regrettable pattern to Mr. Hester's actions in this litigation, and a use of the judicial process to follow his original fraud, misrepresentation and suppression with further oppression of his former wife and family. From the designated record on appeal, we find that Mrs. Hester was forced to go back into the trial court to enforce Mr. Hester's obligations under the first judgment, and was required to defend a rule to reduce alimony and support based on a change of circumstances, although the record failed to show that his situation had been reduced or that her economic status had improved. The evidence was, in fact, to the contrary. His tuition obligations for Amanda had decreased by $5,400.00 annually and his pension participation had been materially enhanced during the interim. His earnings had increased from $176,205 in 1989 to $177,880 in 1991. His pension fund had grown from $266,722 in 1989 to $373,425. The pension plan contribution had increased from $20,119 to $22,475. At the same time, Mrs. Hester's salary was REDUCED from $29,000 annually to $22,000. Her gross income after paying the Trinity School tuition of the two younger children decreased from $672 monthly in 1989 to $426 per month at the time of this trial. Mr. Hester's tuition expense was substantially reduced while his income increased; Mrs. Hester's income decreased by nearly a fourth; upon these changed circumstances, Mr. Hester sought to have his financial obligation to his wife and children REDUCED. The disparity is obvious. Mr. Hester's rule was heard by the trial court and was summarily denied from the bench, and that denial has not been appealed.

Mr. Hester required issuance of a court order before he would pay to send his children to summer camp as previously ordered.
In addition, Mrs. Hester had to obtain a court order forcing her husband to coendorse and deposit their $3,794 income tax refund in order that the parties would not continue to lose interest on this community asset.
The record also shows Mrs. Hester's motion to hold Mr. Hester in contempt for having failed to pay the alimony pendente lite portion of his law firm bonus as required by the trial court's judgment.
Mrs. Hester was also burdened with the necessity of bringing a successful motion to quash a burdensome request for irrelevant financial documents.
Mr. Hester refused to agree to a schedule of visitation with his children, requiring his wife to file a motion to attempt to provide some certainty for the children regarding his visitation, and make yet another plea to the trial court.
[3] Mr. Hester admitted that he voluntarily over-withholds taxes from his monthly draw, thus artificially deflating his salary check. He also admitted to substantial holdings in his pension accounts of over $370,000, increased pension contributions, salary and bonus increases, an FNBC account in which he deposited $79,036 in 1991, and substantial investments in a U.S.A.A. Mutual Fund, a Merrill Lynch CMA account in which he deposited $70,966.85 in 1991, a CMA stock portfolio account with an investment equity value of $6,272.94, and a total portfolio value as of 1/1/91 of $30,318.84, Kemper International Fund, National Total Income Fund assets that produced a $997 dividend in 1990, modest oil and gas royalties of $358 annually, and he received recently a $10,000 bond from his father. He testified further to a 1991 bonus from his law firm of $13,600, and a 1992 bonus of $20,800.
[4] The majority opinion also cites an opinion from the Third Circuit, Guillory v. Guillory, 626 So.2d 826, 831 (La.App. 3rd Cir.1993). That opinion recognizes the relevance of lifestyle in determining what is "necessary" for support of the party seeking alimony, citing our circuit's opinion in Gottsegen, supra. In the Third Circuit case, the parties had not submitted a detailed listing of their expenses, so the appellate court was unable to conclude that any items were improperly included. The court noted that the trial court is vested with much discretion in fixing alimony awards, and its rulings "will not be disturbed absent a manifest abuse of discretion. Siciliani [v. Siciliani, 552 So.2d 560 (La.App.2d Cir.1989), writ denied] ...; Gray v. Gray, 451 So.2d 579 (La.App. 2d Cir.1984), writ denied." The appellate court affirmed the entire award made by the trial court to the applicant for permanent alimony, holding, "[W]e cannot conclude that the trial court was clearly wrong in its determination of alimony on this record." Guillory, supra at 832. We do not find this case supports the majority's action in the case at bar, but rather indicates general agreement among the circuits that unless manifestly, clearly wrong, a trial court's permanent alimony award will not be disturbed, a conclusion on which we rely.